## INTERNATIONAL POSTAL SUPPLY CO. v. PITNEY–BOWES POSTAGE METER CO.

Patent Appeals Nos. 2239, 2240.

Court of Customs and Patent Appeals. March 19, 1930.

A. D. T. Libby, of Newark, N. J. (Charles L. Sturtevant, of Washington, D. C., of counsel), for appellant.

Alexander & Dowell, of Washington, D. C. (Arthur E. Dowell, of Washington, D. C., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

These two cases came before us and were heard together upon appeal by the International Postal Supply Company from the decision of the Commissioner of Patents affirming the decision of the Examiner of Interferences sustaining the oppositions of Pitney-Bowes Postage Meter Company to the registration of certain trade-marks under the Federal Trade-Mark Act of 1905, as amended (15 USCA §§ 81–109).

In the decisions of the tribunals of the Patent Office, descriptions of the marks are given; that of the Examiner of Interferences being more in detail, and reading as follows:

"The mark of the opposer consists of the notation 'Mail-O-Meter' in which the letters M and R are printed largest with the other letters of the words, Mail and Meter, tapering or sloping towards the middle letter O, which is set off by hyphens from the words Mail and Meter. The letter O is circular in shape and is printed somewhat larger than, the letters L and M adjacent to it. In registration 182,208 the notation alone comprises the mark, but in registration 182,209 the notation is surrounded by an outline of fanciful design.

"The mark of the applicant, on the other hand, consists of the notation, 'Seal O Meter' in which the letter O is. printed largest with the letters of the words Seal and Meter tapering away from it so that the end letters

S and R are which smaller than the middle letter O. The letter O is more or less oval in shape and within it appears the representation of a sealed envelope. The notation is inclosed within a field diamond in shape and colored black and yellow. Over the letter O appear the letters 'I. P. S. Co.' and below it the notation, 'Trade Mark.' The words 'Meter' and 'Trade-mark' are disclaimed apart from the mark illustrated in the drawing.

"From the foregoing it is seen that the marks of both parties are compound words, or notations, consisting of two words with the letter O between them. The word Meter is common to each and appears at the end of each notation. The first word of each notation consists of four letters of which two of the letters, A and L, are common to both, and the letter L terminates each word. Also the letters forming each of the marks taper, or slope, but in opposite direction; those of the opposer tapering from the ends towards the middle letter O while those of applicant taper away from the middle letter O towards the ends. Opposer's mark of registration, 182,209, is also inclosed within a field described by a line which is more or less concentric with the outline of the lettering while applicant's mark is placed within a diamond shaped field. The principal difference between the two marks resides in the first words, one being 'Seal' and the other 'Mail.' Another difference appears in the shape or contour of the two marks; the lettering forming applicant's mark is shaped so as to be more or less concentric with the diamond shaped field which is of a characteristic color, black and yellow, while the lettering of opposer's mark, is shaped so as to be concentrically placed within a field described by an outline of more or less artistic design. This design however is quite different in outline from applicant's diamond field."

The degree of resemblance between the respective marks is shown from the above-quoted description, and we agree with the Examiner that the words "Mail-O-Meter" and "Seal O Meter," respectively, comprise the dominant and essential characteristics of the two.

The question is, therefore, whether, in view of such resemblance as exists in the marks themselves, the goods to which they are applied are of the same descriptive properties, so that as a result there would be likelihood of their causing confusion or mistake in the mind of the public or deceiving purchasers.

In passing upon the question, the Examiner of Interferences said: "It is not disputed that the goods on which the marks are used possess the same descriptive properties."

Applicant, in stating the grounds of its appeal to the Commissioner, insisted that the Examiner was in error in so finding.

Upon the issue, the Commissioner of Patents found: "It is quite clear the applicant company is now using its mark upon substantially the same kind of machines as those upon which the opposer has continuously used its mark from a date long prior to that established by the applicant. Under these conditions, the question here to be considered is restricted to the similarity of the marks."

In the appeal to this court, error is assigned upon this finding of the Commissioner.

In our study of this question, as of the other matters constituting the issue, we have made careful examination of the record, including the evidence taken and the numerous exhibits filed.

It is the insistence of appellant (applicant) that the only items of merchandise possessing the same descriptive properties are certain machines of opposer which are being sold under the trade name of "Metered-Mail," and that the "Mail-O-Meter" machines of opposer, which seal and affix stamps, are not machines of the same descriptive properties as the "stamp-canceling" machines of appellant.

The "Metered-Mail" trade-marks of opposer appear to be registered marks, but they are not immediately involved in the instant case; opposer insisting that there is competition between the articles marked "Seal O Meter" and those marked "Mail-O-Meter," as well as between the "Metered-Mail" and "Seal O Meter" devices, which should cause appellant's application for registry to be denied.

From the whole record in the case, we feel constrained to agree with the finding of the Commissioner of Patents on this question. Both the "Mail-O-Meter" and "Seal O Meter" machines are used to seal and stamp envelopes and are sold to private owners for that purpose. They are likewise equipped with devices to count the number of pieces of mail stamped by the machine.

Appellant's device is evidently more than merely a postage canceling machine.

In its Exhibit No. 18, which seems to be an advertising pamphlet, the statement is made that "Seal O Meter No. 2 * * *

694

automatically feeds, separates, seals, metres, post-marks and stamps."

In Exhibit No. 1 of appellee, which also seems to be advertising matter, the claim is made that "Mail-O-Meter" is the "first mechanism for simultaneously sealing letters, affixing the postage stamps and rendering an account of the postage used."

It is quite apparent, we think, that the respective devices are, in a number of essential features, identical in purpose and quite similar in function. The record does not sustain appellant's contention as to there being no similarity in the devices which are actually in competition under the respective marks, "Mail-O-Meter" and "Seal O Meter," and we find no error in the decision of the Commissioner on this point.

There is a strong resemblance between the marks themselves, and we think the distinctive similarities between the machines to which the marks are applied bring them within the phrase "of the same descriptive properties," and that the record justifies the conclusion that the application of the marks would likely cause confusion or mistake in the mind of the public.

It was stipulated by counsel for the respective parties to the cases "that the appeals 6876 and 6877 be consolidated and treated as one appeal."

We have accordingly so treated them here, and in both cases the decision of the Commissioner of Patents is affirmed.

Affirmed.