**GILLETTE COMPANY, Plaintiff,**

**v.**

**ED PINAUD, INC., Defendant.**

United States District Court
S. D. New York.
Dec. 7, 1959.

Stephen H. Philbin, New York City, for plaintiff, Rowland V. Patrick, Boston, Mass., Morris I. Leibman, Richard H. Prins, Chicago, Ill., of counsel.

Blum, Moscovitz, Friedman & Blum, New York City, for defendant, Asher Blum, New York City, of counsel.

FREDERICK van PELT BRYAN, District Judge.

This is an action for trademark infringement and unfair competition. Plaintiff manufactures and sells a line of products for women's hair under the name "Toni", and a hair spray called "Adorn, by Toni". Defendant manufactures and sells hair preparations for both men and women and a hair spray under the name "Tonicream", among others.

Plaintiff moves to restrain defendant, pending the trial of the action, from using the name "Tonicream" in the marketing of defendant's hair spray, alleging that such conduct infringes upon its trademark registration of the name "Toni", is causing confusion and mistake and is deceiving purchasers as to the source of origin of "Tonicream".

The complaint is in three counts. The first, under the Lanham Act, 15 U.S.C.A. § 1051 et seq., alleges infringement of several United States trademark registrations of the name "Toni" covering home permanent waving kits and other women's hair preparations. The second count is for common law trademark infringement on the same facts. The third count, also on the same facts, is for unfair competition. Jurisdiction is laid under 15 U.S.C.A. § 1121, and 28 U.S.C. §§ 1338, 1332(a) (1).

The amended answer denies infringement and unfair competition, asserts defendant's ownership of a trademark registration of "Tonicream" issued under the Trademark Act of 1920, 41 Stat. 533, alleges priority over plaintiff by a predecessor of defendant, and claims laches, acquiescence and estoppel. Defendant also sets up a counterclaim seeking to have plaintiff's "Toni" registrations declared invalid if it be held that "Tonicream" infringes them. A reply denies all the material allegations of the counterclaim.

There is relatively little dispute as to the facts.

The "Toni" business began in 1944 with the introduction by the Toni Company, a Minnesota corporation, of the "Toni" home permanent wave kit for waving women's hair without heat. This product, through wide advertising and the slogan "Which Twin has the Toni" met with phenomenal success and was soon being marketed on a nationwide basis. Plaintiff purchased the Toni business in January 1948 for a large sum and has continued it as one of its divisions.

The name "Toni" written in script was registered as a trademark covering the home permanent wave kit by plaintiff's predecessor on September 11, 1945 under the Act of February 20, 1905 alleging continuous use since August 1, 1944. Thereafter there were other registrations of "Toni" covering hair curlers and hair waving lotions under the 1905 Act. The

name in slanting script was also registered for the home permanent wave kit under the Lanham Act on September 21, 1948, and there were further registrations of the name under that Act on October 18, 1949 covering a shampoo, and on May 30, 1950 covering a "creme" hair rinse. Plaintiff's right to use the "Toni" registrations for the home permanent wave kit and the hair rinse have become incontestable under § 15 of the Lanham Act, 15 U.S.C.A. § 1065. Plaintiff also registered the name "Adorn" for cream and lotion hair preparations on January 17, 1956, and for a hair spray on May 14, 1957. The name "Adorn" is presently used by the plaintiff on its hair spray preparation as "Adorn—Self-styling Hairspray—by toni".

There is no doubt that the "Toni" products are sold throughout the country on a large scale, that many millions have been spent on advertising and promoting them and that they are very widely known throughout the extensive women's hair care field.

The name "Tonicream" was registered for face lotions and hair lotions by defendant's predecessor, Pinaud, Incorporated, on May 7, 1944 under the Act of 1920 [1] with continuous use claimed since 1939. Pinaud, Incorporated, was an American affiliate of a well known French cosmetic house which had done business for many years under the name Pinaud, Inc. It appears that in 1939 some 1,000 jars of a product called "Tonicream" were imported by plaintiff's predecessor from France. The claim is made that further imports from France were interrupted by the war. When the mark was registered in the United States Patent Office in 1944 the verified application stated that "the mark has been in bona fide use for not less than one year in interstate commerce by the applicant".

In 1947 defendant's predecessor assigned its good-will and various trademark registrations, including "Tonicream" to defendant Ed Pinaud, Inc. In 1948, shortly after the acquisition of the business, defendant merged with Nestle LeMur Co., Inc. which also manufactured hair products, and began to manufacture and market "Tonicream" hair preparations which it advertised widely. The principal product was a hair tonic for men, used mainly in barber shops. In 1954, however, the defendant widened the use of the mark "Tonicream" and introduced "Tonicream Lotion Shampoo" and "Tonicream Hair Conditioner Groomer", a hair lotion for "men, women and children". By this time Toni was marketing a wide line of home permanent kits and women's hair preparations.

While the complaint in this action is directed to the use of "Tonicream" on all hair preparations in the retail field, the present motion for preliminary relief is confined to the use of "Tonicream" on defendant's hair spray.

According to plaintiff, some time prior to 1957, hair sprays in pressurized cans designed to permit a woman to set her hair at home, began to cut deeply into the home wave market. In 1957 plaintiff commenced marketing its own hair spray under the caption "Adorn—Self-styling Hairspray—by toni". Some months later, early in 1958, defendant began marketing a hair spray under the name "Tonicream Curl Magic Hair Beauty Spray" or "Tonicream Magic Net Hair Beauty Spray". The words "Magic Net" has also been registered by defendant in the United States Patent Office. It was

---

1. Defendant's mark was denied registration under the Trademark Act of 1905, since the examiner felt that it was merely a misspelling of the descriptive words "Tonic-cream". A trademark consisting of descriptive words may not be registered under the Act of 1905 but may be registered under the Act of 1920. Compare § 5 of the Act of 1905, with § 1(b) of the Act of 1920. Registration on the 1920 register is less advantageous than registration on the 1905 register. For this reason, and because a mark cannot be registered under the Act of 1920, if it is registrable under the Act of 1905, many marks registered after 1920 are registered under the Act of 1905. See generally Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195.

the introduction of defendant's "Toni-cream" hair spray which precipitated the present action.

There is dispute between the parties as to the properties of hair spray. Defendant claims that hair spray is merely a hair lotion in a pressurized can which enables it to be sprayed on the hair instead of being applied by hand. Plaintiff takes the position that hair spray is a new and different product which is a substitute for and directly competes with the home permanent wave. In support of its position plaintiff points to claims made by the defendant in its advertising and promotional material, couched in the extravagant language usual in this field, indicating that its hair spray has curling or waving, as well as setting, properties. These questions cannot be resolved on the affidavits before me.

The labels and packaging of the two hair spray products are quite dissimilar. It does not appear that there was any attempt on the part of the defendant to imitate the plaintiff's label and package in design, color, or otherwise.

The only possible source of confusion of origin lies in the use of the word "Tonicream" by defendant as suggesting that its hair spray is a product of the Toni Company.

There is substantial evidence that there has been confusion, largely among retailers in the trade who would be presumed to be more aware of the difference than the ultimate consumer, as to whether the origin of defendant's hair spray is the Toni Company. Moreover, a number of retailers selling defendant's "Toni-cream" hair spray have referred to it in their advertising and promotional matter as "Toni-Cream", or as "Toni Cream", or as "Toni-Creme", or merely as "Toni".

Defendant, on the other hand, claims that its hair spray is merely the hair lotion which it had marketed for many years under the registered name "Toni-cream" applied by spraying from a pressuried can. It says that through registration and use it legitimately acquired the right to use the name "Tonicream"

on women's hair lotions and is now doing no more than that. It asserts that plaintiff can no more object to "Tonicream" hair spray than it can to "Tonicream" hair lotion.

While the papers before me indicate that the plaintiff has the stronger position on these issues, they cannot be finally resolved without a trial.

Defendant also contends that plaintiff, having acquiesced in defendant's use of the word "Tonicream" on women's hair lotion for several years, is guilty of laches which bars it from relief. Whether or not the defense of laches is ultimately determined to bar final relief, in my view it at least bars plaintiff from the preliminary injunction which it seeks on this motion.

It appears that defendant under the name "Tonicream" has been marketing its hair lotion, primarily for men, since 1948 and for women since 1954. Plaintiff admits that it knew of defendant's "Tonicream" mark since 1946 and of the marketing of its "Tonicream" hair lotion since 1948. It also knew that "Tonicream" hair lotion for women was being marketed since 1954 when defendant made a public announcement to this effect. Yet at no time until after defendant put its "Tonicream" hair spray on the market early in 1958 did plaintiff make any protest to the defendant or take any action whatsoever indicating that it claimed any violation of its rights. It slept on any rights which it might have had with respect to the use of "Tonicream" for women's hair lotion for at least four years.

As I have pointed out, defendant claims that its hair spray is merely its hair lotion sold in the conventional pressurized can so that it can be applied by spraying rather than by hand. It further says that in marketing its spray it is legitimately continuing to exploit the good-will which it had built up by its prior use of the "Tonicream" name in the hair care field generally, and particularly in the women's hair care field.

On this application plaintiff does not convincingly negative this claim. Even

though the volume of sales of the "Toni-cream" women's hair care products was relatively small in comparison with the enormous Toni volume, it cannot be said that the failure of the plaintiff to make any objection whatsoever to the use of the name "Tonicream" in this field did not lull the defendant into a justifiable sense of security under which it entered the hair spray market. In the absence of protest of any kind from the plaintiff the defendant placed its hair spray on the market under a mark which, at least on its face, was valid and to which plaintiff had never objected. Defendant widely advertised and extensively promoted this product and built up a substantial volume of sales in it.

It is true that plaintiff reacted with alacrity to the introduction of the "Toni-cream" hair spray in 1958, by promptly making the claim that its rights were being invaded. But by that time such damage as may have been caused by its acquiescence and inaction for some four years had already been done. The defendant's hair spray product had already been developed, placed on the market and promoted and advertised.

■ In trademark cases the defense of laches may frequently be sufficient to bar damages but will rarely bar a final injunction.[2] Menendez v. Holt, 128 U.S. 514, 9 S.Ct. 143, 32 L.Ed. 526; Mandee Fabrics, Inc. v. Slifka, D.C.S.D.N.Y., 97 F.Supp. 187; Cohn & Rosenberger v. Kaufman & Ruderman, 280 App.Div. 241, 113 N.Y.S.2d 62. But see Thomas J. Carroll & Son Co. v. McIlvaine & Baldwin, 2 Cir., 183 F. 22 (denying preliminary injunction).

On the other hand, while laches may not be sufficient to bar a permanent injunction it may well be a bar to preliminary relief. A preliminary injunction is sought upon the theory that there is an urgent need for speedy action to protect the plaintiff's rights. By sleeping on its rights a plaintiff demonstrates the lack of need for speedy action and cannot complain of the delay involved pending any final relief to which it may be entitled after a trial of all the issues. Chase Brass & Copper Co. v. Chase Metalcraft Corp., D.C.S.D.N.Y., 19 F.Supp. 966; Burke v. Bishop, 2 Cir., 144 F. 838; International Latex Corp. v. Revlon Products Corp., 3 Misc.2d 487, 148 N.Y.S.2d 304; Ronson Art Metal Works v. Savoy of London, Sup., 130 N.Y.S.2d 500, affirmed 283 App.Div. 940, 131 N.Y.S.2d 302.

Here plaintiff, knowing of defendant's continued use of the word "Tonicream" in the women's hair care field, acquiesced in such use for four years. Against a background of such acquiescence defendant developed its "Tonicream" hair spray product and marketing. The plaintiff's course of conduct indicates plainly that there is no real urgency at this time which requires preliminary relief. Moreover, lack of urgency is further indicated by plaintiff's delay of over six months between the commencement of the action and the making of the present motion. During this period plaintiff could have been far advanced toward final adjudication of the issues. International Latex Corp. v. Revlon Products Corp., supra.

This is not a case of flagrant or fraudulent violation of the trademark or patent laws or of conduct with deliberate intention to confuse or deceive where injunctive relief might be granted despite long acquiescence by the plaintiff. My-T Fine Corp. v. Samuels, 2 Cir., 69 F.2d 76 (reversing denial of preliminary injunction). For cases involving permanent injunctions see Wesson v. Galef, D.C.S.D. N.Y., 286 F. 621; National Lead Co. v. Wolfe, 9 Cir., 223 F.2d 195, certiorari denied 350 U.S. 883, 76 S.Ct. 135, 100

2. The parties do not make any reference to whether federal law or New York law is applicable on the questions presented. However, it makes no difference which is applicable since both are in substance the same. On the choice of law problem generally see Speedry Products, Inc. v. Dri-Mark Products, Inc., 2 Cir., 271 F. 2d 646; Maternally Yours v. Your Maternity Shop, Inc., 2 Cir., 234 F.2d 538; Hyde Park Clothes, Inc. v. Hyde Park Fashions, Inc., 2 Cir., 204 F.2d 233.

.L.Ed. 778; H. A. Metz Laboratories v. Blackman, 153 Misc. 171, 182, 275 N.Y.S. 407.

Defendant here had, at the least, an arguable right to its registered mark. It has made no attempt to copy the "Toni" packaging or to imitate the distinctive script in which the word "toni" is usually written. Moreover, after the plaintiff's protest in 1958 the defendant changed its package so as to display more prominently the name "Pinaud" for the ostensible purpose of making confusion less likely.

It is scarcely necessary to review what is required to be shown to obtain a preliminary injunction. Probability of success on the trial and irreparable damage resulting from the denial of the motion are essential. See Speedry Products, Inc. v. Dri-Mark Products, Inc., 2 Cir., 271 F.2d 646, and cases cited therein for the most recent review of the subject by the Court of Appeals for this circuit.

The grant or denial of preliminary relief of this nature rests in the sound discretion of the court upon consideration of all the facts and circumstances. American Visuals Corp. v. Holland, 2 Cir., 219 F.2d 223; Huber Baking Co. v. Stroehmann Bros. Co., 2 Cir., 208 F.2d 464; Burlington Mills Corp. v. Roy Fabrics, D.C.S.D.N.Y., 91 F.Supp. 39, affirmed, 2 Cir., 182 F.2d 1020.

Here in view of the laches and acquiescence of the plaintiff, the doubt as to the probability of plaintiff's success at the trial, in the light of the variety of issues which require determination, and plaintiff's failure to show that defendant is unable or unlikely to be able to respond in damages for any damage plaintiff may have suffered, plaintiff will not be granted a preliminary injunction.

However, in my view the plaintiff should have an early trial and I recommend that the case be granted a preference. An application pursuant to the calendar rules of this court should be made on this basis.

Plaintiff's motion for a preliminary injunction is denied.

Settle order on notice.